FILED

March 21, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 9:45 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| DARCIE MOFFITT, **Employee**, | ) Docket No.: 2015-03-0211 |
| v. | ) State File Number: 41650-2015 |
| TAKAHATA PRECISIONS, **Employer**, | ) Judge Lisa Lowe Knott |
| And | ) |
| TRAVELERS, **Insurance Carrier**. | ) |

## EXPEDITED HEARING ORDER GRANTING PAST TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Darcie Moffitt, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Ms. Moffitt is entitled to past temporary total disability benefits from May 6, 2015, through December 22, 2015. The central legal issue is whether the authorized treating physician assigned restrictions based on Ms. Moffitt's work injury or her pregnancy. For the reasons set forth below, the Court finds Ms. Moffitt is likely to prevail at a hearing on the merits that she is entitled to past temporary total disability benefits.[1]

### History of Claim

Ms. Moffitt is a thirty-four-year-old resident of Scott County, Tennessee. Takahata Precision employed Ms. Moffitt as a production operator.

On August 13, 2014, Ms. Moffitt slipped and fell injuring her left knee. Karen West, FNP at Grace Primary Care, initially evaluated her. FNP West diagnosed Ms. Moffitt with left-knee pain and released her to return to full duty on August 15, 2014. On August 26, 2014, FNP West recommended referral to an orthopedic for evaluation. On

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

September 23, 2014, FNP West again recommended orthopedic evaluation and ordered a left-knee MRI.

Ms. Moffitt ultimately came to see orthopedic Dr. Michael O'Brien on November 4, 2014. Dr. O'Brien diagnosed Ms. Moffitt with left-knee pain and a possible meniscus tear. He returned her to work without restrictions but continued to treat her conservatively.

On December 5, 2014, Ms. Moffitt underwent a left-knee MRI, which revealed a tear. After reviewing the MRI findings, Dr. O'Brien recommended surgery, and released Ms. Moffitt to return to work without restrictions pending her surgery. At the pre-surgery workup, Ms. Moffitt discovered she was pregnant. As a result, she was unable to proceed with surgery and unable to take anti-inflammatory medication. On April 1, 2015, Dr. O'Brien assigned Ms. Moffitt restrictions, and although Takahata was unable to accommodate those restrictions, it refused to pay temporary disability benefits.

On June 3, 2015, Ms. Moffitt filed a Petition for Benefit Determination (PBD) seeking temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Ms. Moffitt filed a Request for Expedited Hearing, and this Court heard the matter on March 2, 2016.

At the Expedited Hearing, Ms. Moffitt asserted she is entitled to temporary disability benefits because the only statutory mechanism for terminating benefits is non-compliance, and it was not unreasonable for her to postpone surgery until after her pregnancy. Takahata countered the delay in medical treatment and restrictions that prevented Ms. Moffitt from working are the result of Ms. Moffitt's pregnancy, and it would be unfair to penalize Takahata for her non-work-related pregnancy. At the expedited hearing, Takahata's attorney conceded she did not have any case law to support her position.

### Findings of Fact and Conclusions of Law

*Temporary Disability Benefits*

In this case, Takahata accepted Ms. Moffitt's injury as compensable and provided her with medical benefits. The only disputed issue at this time is whether Ms. Moffitt is entitled to past temporary disability benefits from May 6, 2015, through December 22, 2015. Because this case is in a posture of an expedited hearing, Ms. Moffitt need not prove every element of her claim by a preponderance of the evidence in order to obtain temporary disability benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which

2

this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

With regard to temporary disability benefits, our Appeals Board held that:

> As the name implies, an injured worker is entitled to temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2014). Specifically, while temporary total disability refers to the employee's condition while completely unable to work because of the injury until the worker recovers as far as the nature of the injury permits, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery."

*Mace v. Express Services, Inc.,* No. 2015-06-0059, 2015 TN Wrk. Comp. App. Bd. LEXIS 49, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), *citing Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

Ms. Moffitt filed an affidavit outlining her treatment and restrictions, and it contained the following pertinent information:

- On August 26, 2014, Dr. Timothy Smith referred her to see an orthopedic surgeon.
- She did not see an orthopedic surgeon until November 4, 2014, approximately ten weeks after her injury.
- On January 21, 2015, Dr. O'Brien recommended surgery on her left knee.
- At the pre-surgery workup on February 5, 2015, it was discovered that she was pregnant and surgery could not be performed.
- Dr. O'Brien assigned restrictions Takahata did not accommodate. After the April 2015 restrictions were assigned, Takahata suspended her temporary disability benefits.
- Had it not been for Takahata's delay in providing treatment with an orthopedic surgeon, her surgery would have already been performed.[2] (Ex. 1.)

The Court finds a review Dr. O'Brien's medical records necessary to address the temporary disability issue. On April 1, 2015, Dr. O'Brien noted, "I really think she needs

---

[2] In an effort to refute that Takahata's actions or inactions delayed Ms. Moffitt's medical treatment, its attorney argued details about the dates of the referrals and the dates it provided physician panels. The Court does not find her argument persuasive because counsel provided no corroborating evidence.

a job where she sits with her leg elevated as needed. May walk short distances and [if] unable to accommodate this will probably have to be disabled until the end of her pregnancy?" (Ex. 8.) On May 4, 2015, Dr. O'Brien noted, "Again I think both her pregnancy and Workmen's Compensation injury contributes to her swelling. She obviously had swelling and pain and problems to the left knee prior to the pregnancy, so *the injury is probably contributing more to her swelling problems than the pregnancy.*" (Emphasis added.) (Ex. 8.) On June 24, 2015, Dr. O'Brien noted, "it is a combination of both [the pregnancy and left knee injury] that are preventing her from working." *Id.*

After Dr. O'Brien imposed restrictions in April 2015, the adjuster, Pam Terry, sent him a letter asking, "Is this need to be on sit down work 51% or more related to the work injury of 8/12/14 or 51% or more related to the pregnancy." Dr. O'Brien's response was, "? More related to work injury." Ms. Terry also asked, "Why was the employee able to work full duty until now?" To which Dr. O'Brien responded, "Less swelling." (Ex. 7.) In an effort to establish Ms. Moffitt's inability to work was solely related to her pregnancy, Adjuster Terry sent another letter to Dr. O'Brien. Dr. O'Brien answered, "Yes" that but for the pregnancy Ms. Moffitt: would have undergone the surgery as scheduled on February 26, 2015; would have been able to take anti-inflammatories to reduce the swelling in her knee; and would have continued to work full duty up to the date of surgery. (Ex. 6.)

Ms. Moffitt argued it was reasonable for her to refuse surgery since she was pregnant. In fact, Dr. O'Brien made the decision to delay surgery until after Ms. Moffitt's pregnancy.[3] (Ex. 9.) To the extent relevant, the Court finds Ms. Moffitt followed Dr. O'Brien's recommendation to delay surgery until after her pregnancy. Therefore, any argument that Ms. Moffitt was non-compliant with medical treatment is unpersuasive.

Ultimately, Ms. Moffitt had her baby and sought follow-up treatment with Dr. O'Brien on November 4, 2015. During that visit, Dr. O'Brien documented "left knee swelling" and noted, "[Ms. Moffitt] stated that the swelling has worsened since the birth of her son." (Ex. 9.)

The Court finds there was a delay in Ms. Moffitt's orthopedic evaluation and Takahata caused the delay.[3] Takahata suggests that but for Ms. Moffitt's pregnancy the surgery would have taken place as scheduled. However, it is equally true that had Takahata provided the orthopedic evaluation within three days of the referral, Dr. O'Brien could have performed the surgery prior to Ms. Moffitt's pregnancy. Takahata

---

[3] At the expedited hearing, Ms. Moffitt objected to the introduction of Dr. O'Brien's updated medical records from August 5, 2015, through November 4, 2015, as being irrelevant. The Court marked the records as Exhibit 9 and designated them for identification purposes only. The Court finds Dr. O'Brien's updated records are relevant for purposes of determining Ms. Moffitt's left-knee condition after having her baby. Therefore, Dr. O'Brien's updated medical records are accepted into evidence as Exhibit 9.

4

argued it would be unfair to penalize it for Ms. Moffitt's pregnancy. It would also be unfair to penalize Ms. Moffitt for Takahata's delay in providing orthopedic treatment.

Dr. O'Brien's records reflect Ms. Moffitt had left-knee swelling: following the injury and prior to her pregnancy; during her pregnancy; and following the birth of her child. Although Dr. O'Brien used a question mark in his response to Adjuster Terry's first letter regarding the cause of the need for restrictions, he followed with, "more related to work injury." In addition, even though Dr. O'Brien acknowledged that both the pregnancy and the work injury were contributing to the swelling, which in turn led to the restrictions, he noted in his records that the injury was probably contributing more.

Based on the foregoing, and taking the evidence submitted as a whole, the Court finds Ms. Moffitt has come forward with sufficient evidence from which this Court concludes she is likely to prevail at a hearing on the merits in proving the workplace accident, rather than her pregnancy, resulted in imposition of restrictions that inhibited her ability to return to work. Therefore, her requests for temporary disability benefits from May 6, 2015, through December 22, 2015, are granted at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Ms. Moffitt's injuries shall continue to be paid by Takahata Precision or its workers' compensation carrier with authorized physician, Dr. O'Brien.

2. The amount of temporary disability benefit is $195.33 per week based on Ms. Moffitt's average weekly wage of $293.30 (per the DCN).

3. Payment of past-due benefits in the amount of $6,445.89 shall be made for the period from May 6, 2015, to December 22, 2015.

4. It is the understanding of the Court that Takahata or its workers' compensation carrier began payment of temporary disability benefits following Ms. Moffitt's surgery and agreed to continue paying those benefits in regular intervals until she becomes ineligible. In the event Takhata decides to terminiate temporary disability benefit payments, Takahata's representative shall immediately notify the Bureau, Ms. Moffitt, and Ms. Moffitt's counsel, of the intent to terminate ongoing temporary disability benefits by filing Form C-26, citing the basis for the termination.

5. This matter is set for an Initial (Scheduling) Hearing on May 3, 2016, at 9:30 a.m. Eastern Time.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 21st day of March, 2016.**

*Lisa Lowe Knott*

**Judge Lisa Lowe Knott**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Lisa Lowe Knott, Court of Workers' Compensation Claims. You must call 865-594-0109 or toll-free at 855-383-0003 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

6

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

- EXHIBIT 1: Affidavit of Darcie Moffitt;
- EXHIBIT 2: Notice of Controversy, Form C-27;
- EXHIBIT 3: Wage Statement, Form C-41;
- EXHIBIT 4: First Report of Work Injury, Form C-20;
- EXHIBIT 5: Panel Physicians, Form C-42;
- EXHIBIT 6: June 29, 2015 Questionnaire to Dr. O'Brien;
- EXHIBIT 7: April 10, 2015 Questionnaire to Dr. O'Brien'
- EXHIBIT 8: Medical Records of Dr. O'Brien; and
- EXIBIT 9: Dr. O'Brien's updated Medical Records (August 5, 2015, to November 4, 2015).

Technical record:

1) Petition for Benefit Determination;
2) Dispute Certification Notice;
3) Request for Expedited Hearing; and
4) Takahata's Response to Request for Expedited Hearing.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 21st day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Ameesh Kherani, Esq., Ms. Moffitt's Counsel | | | X | AKherani.DHDLaw@gmail.com |
| Jennifer C. Schmidt, Esq., Takahata's Counsel | | | X | JCSCHMID@travelers.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**